FILED

99 JUN 18 AM 10: 02

U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | | |
|---|---|---|
| MARKEL INSURANCE COMPANY, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | CV-98-BU-2968-S |
| | ) | |
| MOUNTAIN MOVERS, L.L.C.; et al., | ) | |
| | ) | |
| Defendants. | ) | |

ENTERED

JUN 18 1999

## MEMORANDUM OF OPINION

This case is presently pending before this Court on the Defendants' Motion to Reconsider (Doc. 63). The parties have briefed the Motion and the Court finds that the Motion is due to be granted and the case dismissed for failure to join an indispensable party.

### FACTS & PROCEDURAL HISTORY

Plaintiff Markel Insurance Company filed a Complaint and a Motion for a Temporary Restraining Order. (Docs. 1 & 2) Its Complaint contains the following counts: (1) "Exoneration and Specific Performance," and "Quia Timet[1] and Preliminary Injunction." (Doc. 1). These claims arise from performance and payment bonds Markel issued on

---

[1] The literal translation of "quia timet" is "because he fears." *Escrow Agents' Fidelity Corp. v. Superior Court*, 4 Cal. App. 4th 491, 494, 5 Cal. Rptr. 2d 698, 700 (1992).

behalf of Defendant Mountain Movers. Before issuing the bonds, Markel and Mountain Movers executed a General Agreement of Indemnity (GAI). Defendants Malcolm S. Wadsworth, Dena K. Wadsworth, and Sandy Wadsworth Construction signed the GAI as indemnitors of Mountain Movers's obligations under the bonds.

The GAI contains a clause that requires Mountain Movers and the indemnitors to collateralize any reserve Markel may establish in anticipation of claims under any of the performance or payment bonds it has issued on behalf of Mountain Movers. The GAI provides that Mountain Movers and/or the indemnitors are to deposit "a sum of money equal to such reserve" on demand. Also, according to the agreement, Markel would hold the money as "collateral security" for the payment of any claims or expenses "for which [Markel] may become liable in consequence for having executed or procured the execution of such bond(s)." *Id.* ¶ 8; *Id.* Exh. A.

Markel claims that it has received several notices of claim against the bonds, and it claims it has investigated these claims. Based on its investigations, Markel contends herein that "one or more of the claims may be meritorious." (Doc. 1, ¶ 5). In addition to the claims asserted by "laborers and material suppliers," *Id.*, Markel contends that legal counsel for the Town of Vance informed it that Vance had terminated its contract with Mountain Movers due to Mountain Mover's default. *Id.*, ¶ 6. In accordance with the terms of the GAI, Markel requested Mountain Movers and the indemnitors to deposit $894,750, the amount Markel contends it needs to cover the claims under the bonds. *Id.* ¶ 9. Markel alleges:

> Based on the . . . facts and circumstances, and on its continuing

investigation, Markel justifiably fears that the assets of the principal [Mountain Movers] and the indemnitors may be inadequate to discharge all obligations of Mountain Movers, as principal, and that, therefore, Markel will sustain a loss. In equity and good conscience, the assets of the defendants should be marshaled and made available to ensure the discharge of the obligations of the principal, the indemnitors as specified in the General Agreement of Indemnity. Markel offers to do equity, and requests the assistance of this Court, exercising its equity powers, to require the specific performance of all obligations of the General Agreement of Indemnity so as to provide for the exoneration and indemnification of Markel, as surety.

*Id.* ¶ 10.

Along with its Complaint, Markel filed an Application for Temporary Restraining Order. (Doc. 2). Markel alleged that it, "as surety, by and through the remedies of exoneration and quia timet, is entitled to be secure from anticipated losses arising by virtue of the execution of the [performance and payments] bonds." *Id.* ¶ 4. A letter from Mountain Movers, signed by Mr. Wadsworth and addressed to "All Suppliers," was attached to the Application. *Id.* Exh. B. This letter stated:

Mountain Movers is asking that you close our accounts. Due to a dispute we do not at this time have the ability to pay our bills. We have been and still are working to resolve the dispute and working on solutions to pay our suppliers, but it appears that the matter will be settled with lawyers and maybe in court.

In addition to trying to resolve the dispute, Dena and myself are trying to sell our assets so that we can pay off the ones we owe but that will not be an overnight solution. Lord willing, we will pay you as soon as we can.

To all Suppliers that have supplied bonded projects we are suggesting that you turn in a claim to the bonding company.

I am very sorry for the way things are but we are working very hard to resolve this matter.

*Id.*

This Court entered a TRO and, subsequently, entered a Preliminary Injunction by consent and agreement. The terms of the preliminary injunction impose a judicial lien in favor of Markel on all real estate of Defendants. Also, Mountain Movers was permitted to sell it equipment and inventory; the proceeds of any sale are to be deposited in an escrow account. Defendants, however, could not sell or otherwise transfer any asset with a value over $1,000. In addition to these limitations, the Court ordered that Markel was to have full and unrestricted access to all business records.

Prior to the entry of this Order, Defendants filed a Motion to Abstain or Dismiss this action in favor a the state court action, *Mountain Movers, et al. v.. Markel Insurance Co., et al.*, CV 99-65, which Defendants had filed in the Circuit Court of Tuscaloosa County. Defendants' state court action asserts claims of breach of contract, fraud, negligence, recklessness, wantonness, and tortious interference with contractual relations against Markel, the Town of Vance, the mayor of Vance, and the project engineer. In their Motion to Abstain or Dismiss, Defendants argued that this Court should abstain from deciding this case under the *Colorado River* doctrine.[2]

While the Motion to Abstain was pending, Markel filed an Amended Complaint in this Court,, adding the Town of Vance, its mayor, and the project engineer as defendants. (Doc. 32). In its Amended Complaint, Markel alleged:

> In October of 1998, the Town of Vance terminated for default the contract between the Town of Vance and Mountain Movers. Mountain Movers has disputed the propriety of this termination and alleged that the Town of Vance

---

[2]*Colorado River Water Conservation District v. United States*, 424 U.S. 800, 96 S. Ct. 1236, 47 L. Ed. 2d 483 (1976).

wrongfully terminated and otherwise breached the contract between the parties. Mountain Movers has also alleged that the Town of Vance engaged in fraudulent conduct and tortiously interfered in Mountain Movers's contractual relationship with Markel. In addition, Mountain Movers has maintained that defendant GMC[3] provided defective engineering services and was negligent in the performance of its duties and obligations as engineer for the project, and that it made fraudulent misrepresentations and tortiously interfered in the contract between Mountain Movers and the Town of Vance, as well as the contractual and business relationship between Mountain Movers and Markel. Mountain Movers has also alleged that defendant Sanders[4] tortiously interfered in the contract between Mountain Movers and the Town of Vance, and that he made certain misrepresentations upon which Mountain Movers relied to its detriment.

(Doc. 32 ¶ 22). Markel stated that it did not "believe" that it had any "duties or obligations" under its bond on the Vance project. *Id.* ¶ 25. It sought a declaratory judgment from this Court "to declare and specify the rights and obligations of the parties with respect to the [Vance] project." *Id.* It also asserted claims against the Vance defendants that were derivative of Mountain Mover's claims and that were asserted by virtue of the relationship between Mountain Movers and Markel. *Id.* ¶ 27 (Breach of Contract by Vance); *Id.* ¶ 29 (Tortious Interference by Vance); *Id.* ¶ 31 (Tortious Interference by Sanders); *Id.* ¶ 33 (Misrepresentations by Sanders); *Id.* ¶ 35 (Negligence by GMC); *Id.* ¶ 29 (Misrepresentations by GMC); *Id.* ¶ 29 (Tortious Interference by GMC).

After Markel amended its Complaint, Defendants asserted that the Amended Complaint destroyed diversity jurisdiction because the claims required Mountain Movers to be realigned as a plaintiff in this action. The Court entered an Order, giving Markel an

---

[3]"GMC" is Goodwyn, Mills, & Cawood, Inc., who is the project engineer on the Vance project.

[4]"Sanders" is Michael W. Sanders, Mayor of the Town of Vance.

opportunity to respond. Markel, in response, voluntarily dismissed Vance and its mayor; and, by joint stipulation, dismissed its claims against the project engineer. All dismissals were without prejudice.

This Court denied Defendants' Motion to Dismiss or Abstain. (Doc. 55) Thereafter, Defendants' filed an Answer and Counterclaim. In their Answer, Defendants raise, *inter alia*, the following affirmative defenses: (1) Plaintiff failed to join necessary and indispensable parties, (2) Plaintiff is not entitled to equitable relief because it is guilty of "unclean hands;" (3) Plaintiff "may not be indemnified for losses resulting from [its] reckless, negligent, or otherwise wrongful conduct;" and (4) Plaintiff "cannot recover because of its fraud, breaches, and other wrongful conduct." (Doc. 61, pp. 6-7). Defendants' Counterclaim contains four counts: (1) Wantonness, Recklessness, and/or Negligence; (2) Tortious Interference with Business and Contractual Relations; (3) Breach of Duty of Good Faith and Fair Dealing;[5] and (4) Fraudulent Misrepresentations. The claims are based on Defendants' allegations that Markel's conduct, after receiving notice of a claim from Vance, caused Mountain Movers to go out of business and to incur additional claims against the bonds. Specifically, Defendants claim that Markel froze their accounts receivable prematurely and without reason and that, despite evidence that supporting Mountain Movers's "innocence," Markel "refused to rescind the 'freeze' until it

---

[5]Markel contends that Alabama has not extended the tort of "bad faith' to the surety/principal relationship. While this Court agrees that the specific tort of bad faith is not applicable to this case, the issue of Markel's good faith, or lack thereof, is relevant and the lack of good faith, or bad faith, would be a defense to Markel's claims based on the GAI. See *Hightower & Co. v. United States Fidelity & Guaranty Co.*, 527 So.2d 698, 703 & n.1 (Ala. 1988).

Page 6 of 18

was too late." *Id.* ¶¶ 3-4). Defendants also claim:

> Markel frequently responded to Mountain Movers's continued plea for a lift of the sanction freezing its accounts receivable by promising falsely to lift or remove the "freeze" thereby inducing Mountain Movers to change its position and inducing Mountain Movers and its principals to devote their time, energy, and resources to a business doomed to failure by the conduct, acts, and omissions of Markel.

*Id.* ¶ 12.

The same day Defendants filed their Answer and Counterclaim, they filed a Motion to Reconsider this Court's Order on their Motion to Dismiss or Abstain. (Doc. 63). In this Motion, Defendants alleged, "the Town of Vance has recently asserted a counterclaim against Mountain Movers and a cross claim against Markel in the pending state court version of this lawsuit." *Id.* ¶ 2. Defendants argued that this Court could not resolve all disputes between the parties and Vance, its mayor, and the project engineer, because the alignment of the parties according to their interest would defeat complete diversity. *Id.* ¶ 3. They also argued that failure to abstain would result in "piecemeal, wasteful, inefficient, and duplicative litigation." *Id.* ¶ 4.

Markel responded to Defendants' Motion for Reconsideration. (Doc. 66) In its response, Markel assured the Court that the state court action was not duplicative, stating, "Disposition of such existing or future claims will not be dispositive of Markel's right to exoneration and indemnification [that] are the subject of this action." *Id.* ¶ 3. Moreover, relying on *Colorado River*, Markel argued that "[t]he relationship, if any, between the issues joined in the state action and these presented in the federal action, does not provide the 'clearest of justifications' necessary to warrant dismissal of the action." *Id.* ¶ 5 (quoting

*Colorado River*, 424 U.S. at 819, 96 S. Ct. at 1247).[6]

The Court found Markel's response did not adequately address the Court's concerns about the action going forward without the Vance defendants; therefore, this Court ordered Markel to appear and show cause why this case should not be dismissed for failure to join an indispensable party. (Doc. 70). In response to the Show Cause Order, Markel again argued that the resolution of its claims against Defendants for specific performance, exoneration, and quia timet did not require resolution of the underlying debts:

> The rights and remedies available to Markel, as surety, are *not* dependent upon the ultimate resolution or outcome of the dispute between Mountain Movers, the Town of Vance, its Mayor, and its consulting engineer. The duties and obligations of Markel and the indemnitors arise and exist because of the *claims* asserted by the Town of Vance and the other obligees and claimants, and are not conditioned or dependent upon a final judicial determination as to the merits of any such claims.

(Doc. 71 ¶ 1 (emphasis in original)).

Despite adequate opportunities for argument, this Court found that the parties had not adequately addressed the effect of a decision in this Court on the parties and claims in the state court action. Therefore, additional briefs were requested. The parties submitted their responses and the motion is herein decided.

---

[6]*Colorado River* abstention is appropriate "where there have been presented difficult questions of state law bearing on policy problems of substantial public import . . . . [T]he state question itself need not be determinative of state policy. It is enough that the exercise of federal review of the question in a case and in similar cases would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814, 96 S. Ct. at 1245. While this case involves only questions of state law, that law appears to be settled, there are no issues involving state policy, and a decision in this case, based on state law, would not disrupt or impair any efforts to implement state policy. *See Id.* at 815, 96 S. Ct. at 1245.

## DISCUSSION

The starting point of any analysis of a joinder issue must begin with the philosophy underlying the federal rules of joinder: "The impulse is towards entertaining the broadest possible scope of action, consistent with fairness to parties; joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of America v. Gibbs*, 383 U.S. 715, 724, 86 S. Ct. 1130, 1138, 16 L. Ed. 2d 218 (1966).

### A.   RULE 19(a): PERSONS TO BE JOINED IF FEASIBLE

Rule 19 requires a person to be joined if feasible if "(1) in the person's absence complete relief cannot be accorded among those already parties, or (2) the person claims an interest relating to the subject of the action and is so situated that disposition of the action in the person's absence, may (i) as a practical matter impair or impede the person's ability to protect that interest or (ii) leave any of the persons already parties subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations by reason of the claims interest." Fed. R. Civ. P. 19(a).

#### 1.   Rule 19(a)(2): Interest Relating to the Subject of the Action

In this case, the Court finds that Vance has an interest in the subject of this action. Markel contends that its "right to specific performance of a collateral security clause does *not* depend upon the validity or merits of a claim. Likewise, it is *irrelevant* whether the obligee/owner or other parties asserting claims against the bonds are parties to an action by the surety to enforce the terms of an indemnity agreement." Plaintiff's Memorandum of Law in Response to Show Cause Order, p. 2 (emphasis in original). However, this

Page 9 of 18

argument ignores the fact that in order to establish its claims of quia timet and exoneration, Markel must establish the validity of, or the lack of a valid defense, to the claims against the bond. *See T.E. Doster v. Continental Casualty Co.*, 268 Ala. 123, 126, 105 So. 2d 83, 86 (1958). *See, e.g., Northwestern National Insurance Co. v. Alberts*, 741 F. Supp. 424, 430 (S.D. N.Y.1990)("To invoke the common law or equitable rights of exoneration a surety must demonstrate that liability is absolute and must in the end rest with the principal, . . . whereas to invoke the doctrine of quia timet , a surety must show reasonable grounds for anticipating that its rights are being jeopardized and thus it will incur a liability by the threatened conduct of the principal."), *rev'd on other grounds*, 937 F.2d 77 (2d Cir. 1991); *Escrow Agents' Fidelity Corp.*, 4 Cal. App. 4th at 495, 5 Cal. Rptr. 2d at 701 ("[T]he surety, before he pays [an obligation to a creditor], may maintain a suit in equity against the debtor [principal] in the nature of a bill quia timet to compel the latter to pay the debt or perform the obligation, *provided the creditor could enforce payment or performance* but neglects or refuses to do it." (quoting *Fireman's Fund Insurance Co. v. S.E.K. Construction Co.*, 436 F.2d 1345, 1349(10th Cir. 1971))(emphasis added)).

Markel filed its Complaint seeking (1) Exoneration and Specific Performance, based upon "the laws governing the relationship of principal and surety and by virtue of the express terms of the aforesaid General Agreement of Indemnity [hereinafter "GAI"]," (Doc. 1 ¶ 12); and (2) Quia Timet and Preliminary Injunction, also based on the terms of the GAI and "the remedies of exoneration and quia timet." *Id.* ¶ 14.

The Second Circuit Court of Appeals has explained the nature of the remedies of quia timet and exoneration:

> Quia timet is the right of a surety to demand that the principal place the surety "in funds" when there are reasonable grounds to believe that the surety will suffer a loss in the future because the principal is likely to default on its primary obligation to the creditor. Exoneration, though closely related, is distinct. It is the surety's right, after the principal's debt has matured, to compel the principal to honor its obligation to the creditor.
>
> ... Quia timet is the applicable remedy available to the surety before the principal's debt is mature when it becomes likely that the principal will default on his obligation; exoneration is the proper remedy once liability has matured and the principal has defaulted on his debt to the creditor.

*Borey v. National Union Fire Insurance Co.*, 934 F.2d 30, 32-33 (2d Cir. 1991). The substantive elements of the claims are:

1. A Debt – "[T]he surety must establish that the debt is presently due (exoneration) or will come due (quia timet)." *Id.* at 33.

2. Principal's Liability for the Debt – The surety must establish "that the principal is liable or will be liable for the debt." *Id.*

3. Prejudice to Surety – The surety must establish "that[,] absent equitable relief, the surety will be prejudiced because it will be forced to advance the money to the creditor." *Id.*

A surety may not maintain an action for quia timet or exoneration (1) when the principal has a defense against the surety; or (2) when the principal has a defense against the creditor, which is available to the surety. *Id.* (citing Restatement of Security § 112, comment d ("Where the principal has the defense of want of capacity, which would not only be a defense against the creditor but also against the surety, or where he has a defense against the creditor which is available to the surety, the principal cannot be compelled to exonerate the surety.")). In the *Borey* case, the Second Circuit Court of Appeals held that allegations of fraud on the part of the creditor <u>and</u> the surety "would bar the surety from seeking quia timet or exoneration relief." *Id.* at 33 (emphasis added).

This Court makes no finding regarding the validity of Defendants' counterclaim or defenses in this case or their state law claims against the Vance Defendants in the state court action. However, the validity of Defendants' defenses to Vance's claim against the bonds issued by Markel must be decided in determining whether Plaintiff is entitled to its claims of quia timet and exoneration. In other words, Markel, in order to recover, must establish that Defendants do not have a defense to Vance's claims. Vance's interest in the validity of its claims against the bonds satisfies the requirement of Rule 19(a)(2) that the person "claims an interest relating to the subject of the action."

    2.    Rule 19(a)(2)(ii) – Risk of Double or Otherwise Inconsistent Obligations

The existence of Vance's interest in this case alone does not determine whether it is "a person who should be joined if feasible." See Fed. R. Civ. P. 19(a). The Court must also determine whether Vance's absence from this proceeding either will impair or impede its ability to protect that interest; or will leave one of the parties at risk of double, multiple, or otherwise inconsistent obligations. The Court finds that, because it must determine the validity of Vance's claims in order to decide Markel's claims for exoneration and quia timet, Markel has a substantial risk of inconsistent obligations. The state court action could find that Vance is entitled to recover under the bond for Mountain Mover's default; if this Court were to find in the exoneration and/or quia timet actions that Mountain Mover's had a valid defense to this claim, it appears that Markel would be liable to Vance, but unable to recover, by reason of res judicata, from Defendants.

The court notes that Markel has responded to this Court's concerns regarding the

failure to join Vance in this action by repeatedly stating that the validity of Vance's claim is not at issue in this action. As the foregoing demonstrates, the validity of Vance's claim is an element in Markel's claim for quia timet and exoneration relief. Although Markel's obstinate refusal to recognize its potential peril may be reason under Rule 19(b) for finding that the action may proceed without Vance, it does not prevent Vance from being deemed a party that should be joined if feasible pursuant to Fed. R. civ. P. 19(a)(2)(ii), which refers to the risk of inconsistent obligations to "any party."

Therefore, based on the foregoing, this Court finds that Vance is a party that should be joined if feasible, pursuant to Rule 19(a). The next analytical step is to determine if Vance can be joined. The Town of Vance is within the personal jurisdiction of this Court; however, its joinder in this action would destroy diversity jurisdiction.[7] Therefore, this Court must address whether the action should proceed in its absence pursuant to Fed. R. Civ. P. 19(b).

B.   RULE 19(b) – EQUITY AND GOOD CONSCIENCE

Rule 19(b) provides:

> If a person cannot as described in subdivision (a)(1)-(2) hereof cannot be made a party, the court shall determine whether in equity and good conscience the action should proceed among the parties before it or should be dismissed, the absent person being thus regarded as indispensable. The factors to be considered by the court include: first, to what extent a judgment rendered in the person's absence might be prejudicial to the person or those already parties; second, the extent to which, by protective provisions in the

---

[7]The lack of subject matter jurisdiction apparently is conceded by Markel. It dismissed its claims against the Vance defendants in response to this Court's Show Cause Order and it does not address the issue of the feasibility of joinder of the Vance defendants in its response to the Motion to Reconsider.

> judgment, by the shaping of relief, or other measures, the prejudice can be lessened or avoided; third, whether the judgment rendered in the person's absence will be adequate; fourth, whether the plaintiff will have an adequate remedy if the action is dismissed for nonjoinder.

Fed. R. Civ. P. 19(b).

The Old Fifth Circuit noted that "Rule 19(b) requires a court to examine four "interests" before deciding whether or not to proceed without the absent party:

> The plaintiff has the right to "control" his own litigation and to choose his own forum. This "right" is, however, like all other rights, "defined" by the rights of others. Thus, the defendant has the right to be safe from needless multiple litigation and from incurring avoidable inconsistent obligations. Likewise the interests of the outsider who cannot be joined must be considered. Finally there is the public interest and the interest the court has in seeing that insofar as possible the litigation will be both effective and expeditious.

*Shutten v. Shell Oil Co.*, 421 F.2d 869, 873 (5th Cir. 1970)(citing *Provident Tradesmens Bank & Trust v. Patterson*, 390 U.S. 102, 109-11, 88 S. Ct. 733, 738-39, 19 L. Ed. 2d 936 (1968)).

The Court begins with the recognition that Defendants have commenced an action in the Circuit Court of Tuscaloosa County, in which Markel and Vance are parties. The existence of this pending state-court case would provide Markel an adequate forum for obtaining all remedies to which it is entitled. Moreover, the Court finds that the proceeding in the state court will be effective and expeditious. The Court notes that Markel seeks specific performance of the collateralization provision of the GAI as part of its claims for relief. The parties do not dispute that Mountain Movers is out of business and insolvent, and that the Wadsworth's assets are primarily real property. The Court entered a preliminary injunction prohibiting the disposal of assets of Mountain Movers and the

Wadsworths without Court approval. The Court finds that, even if Markel is entitled to collateralization under the indemnity agreement, it would not order the real property sold or transferred unless and until the underlying debt was found valid and Markel is absolved of responsibility for the debt. In other words, the Court would not order specific performance, which would require the sale of Defendants' assets, without a finding on the merits of Markel's claims for exoneration and quia timet *and* Defendants' affirmative defenses and counterclaim. **The parties have agreed to the imposition of a similar injunction in state court should this Court dismiss the federal court action.** The continuation of the injunction has the same practical effect as collateralization because it prevents the assets from being dissipated before the validity of the claims on the bonds are decided. These facts show that Markel has an adequate remedy in the state court proceeding if this case is dismissed for nonjoinder.

In addition to the potential for inconsistent obligations, Rule 19(b) instructs the Court to consider the extent to which the judgment rendered in this case might be "prejudicial" to the absent person or the parties. Although any judgment in this case could not be used offensively by Markel or Defendants against the Vance Defendants to establish, as a matter of law, the validity of a claim against Vance, Alabama law does recognize the use of collateral estoppel as a defensive matter. *See N&C Properties v. Windham*, 582 So. 2d 1044, 1046 (Ala. 1991). In other words, Vance could use a judgment or finding favorable to it on the issue of the validity of its claim as a defense to the claims asserted by Mountain Movers in its state court action. Mountain Movers also contends that it may be prejudiced not merely as to its substantive claims against Vance, but also as to the determination of

the amount of damages. It contends that if this Court were to determine a low amount as the value of its business, Vance could assert collateral estoppel to prohibit Mountain Movers from establishing a higher amount of damages.

In addition to the prejudicial effects of collateral estoppel, Mountain Movers also asserts that the absence of Vance from the federal court proceedings and the absence of Markel from the state court proceedings,[8] leaves Mountain Movers with the problem of trying to establish liability of a defendant in the presence of an "empty chair." It explained the situation as follows:

> One of Mountain Movers's concerns is that Markel, in the federal court proceeding, may blame the Town of Vance and/or Goldwyn, Mills & Camwood for conduct damaging to Mountain Movers's business. Similarly, in the state court lawsuit, the Town of Vance and Goldwyn, Mills & Camwood may point the finger at Markel. This "empty chair" problem can only be solved by proceeding before a single court. Only the state court proceeding has all of these parties before it.

(Doc. 80, p. 8).

Also, obviously, proceeding without the Vance parties will require duplication of discovery and litigation of identical issues between Markel and Defendants here and against Vance in state court. This waste of time and money, as a practical matter, is prejudicial.

Rule 19(b) also requires the Court to consider whether it could shape its judgment or relief so as to lessen or avoid the prejudice. This Court has considered whether there are alternatives available to it that would protect the parties from foreseeable prejudice

---

[8]Markel has informed this Court that the state court will dismiss all claims against it in state court it the federal action goes forward.

resulting from proceeding without all necessary parties in one court. No such alternatives are readily apparent to this Court and the parties have not offered their own. Therefore, this Court cannot fashion a way to lessen the foreseeable prejudice to the parties.

This Court does not find that failure to join the Vance parties will hinder providing, as between Markel and Mountain Movers, complete relief for the claims and counterclaims asserted in this case. The problem with the failure to join the Vance parties is that their absence prejudices both parties in this case and that prejudice cannot be avoided. Therefore, this factor does not outweigh the foregoing factors in favor of dismissal for want of an indispensable party.

### CONCLUSION

Based on the foregoing, Defendants' Motion to Reconsider is due to be granted and the case dismissed. The Court will enter a separate Order, dismissing the case, without prejudice to the right of any party to request, within thirty (30) days of this Order, that this case be reopened for failure of the parties to procure the entry of an injunction in the state court proceeding similar to that presently in effect in this proceeding. During said thirty (30) day period, this Court reserves jurisdiction for the filing of such request and during this period, the injunction in effect in this case shall remain in full force and effect.

In the event a party requests that this case be reopened and such request is granted, this Court will retain jurisdiction and stay the proceedings pending a decision in the state court case.

The parties have represented to the Court and the undersigned Judge that they

would enter an injunction in the state court case in the event this Court dismissed the instant case. Such representation is taken seriously by this Court and considered a certification of a material fact to this Court.

DONE this 17th day of June, 1999.

H. DEAN BUTTRAM, JR.
UNITED STATES DISTRICT JUDGE